HARLEY BROWN, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

*Forged note — name of fictitious person — evidence of payment of, immaterial — Evidence of prior arrest of prisoner — Objection to question tending to degrade — may be taken by counsel when witness is a party.*

It is not necessary, in order to constitute the crime of forgery, that the name alleged to be forged should be that of any person in existence; it may be the name of a purely fictitious person.

Upon the trial of an indictment for uttering a forged promissory note, evidence tending to show that the note had been paid is immaterial, and is properly excluded.

Upon an indictment for forgery the prisoner, on his examination in his own behalf, was asked, with a view of impeaching his character, "How many times have you been arrested?" *Held*, that the question was improper, as the mere fact of his arrest had no tendency to impeach his character in any particular.

*Brandon* v. *The People* (42 N. Y., 265) distinguished.

*Semble*, that although the right of a witness to object to answering any question, on the ground that it will tend to disgrace and degrade him, is a personal privilege which must be claimed by the witness, yet that the rule is different in the case of a party examined as a witness, and that in this case the objection may be taken by his counsel, whose duty it is to protect his rights and interpose objections in his interests growing out of any incident in the litigation.

Writ of error to the Court of General Sessions of Ontario county, to review the conviction of the plaintiff in error of forgery.

The indictment upon which the plaintiff in error was convicted contained two counts — one for feloniously forging a promissory note, signed by Edwin Brown, Lucretia Brown (father and mother of plaintiff in error), and Albert Bennett; and the other for uttering and publishing the same with intent to defraud one Joseph C. Shelton.

*E. W. Gardner*, for the plaintiff in error.

*Frank Rice*, district attorney, for the defendants in error.

TALCOTT, J. :

The writ of error in this case brings up a record of the conviction of the plaintiff in error in the General Sessions of Ontario county, with a bill of exceptions attached. The conviction is for feloniously uttering as true a forged promissory note for the payment of money.

The bill of exceptions contains numerous exceptions to the rulings of the court on the admissibility of evidence, to the charge and refusals to charge. To consider in detail all these exceptions is impossible, within any ordinary limits; and since we are of the opinion that the judgment should be reversed and a new trial ordered, we shall only advert to some of the leading questions presented on the trial — such as are likely to arise on another trial.

The evidence tending to identify Albert L. Bennet as the person designed to be represented by the forged signature, such as the name by which said Bennet was usually known in the community, the place of his residence, in connection with the statement of the defendant, and the fact that no other person by the name of Albert Bennet was known in the county of Ontario, was all admissible on the question as to who was intended to be represented by the forged signature. The omission of the initial of the middle name of the person, whom the evidence showed was intended to be represented by the forged signature, was immaterial. In order to constitute forgery it is not necessary that the name alleged to be forged should be that of any person in existence. It may be wholly fictitious; yet when made or uttered with intent to defraud, such making or uttering is punishable as a forgery. (1 Colby's Crim. Law, 183.)

The evidence offered by the defendant to show that the note had been wholly or partially paid, or had been secured by a chattel mortgage, did not answer the legal inference of the intent to defraud which grew out of the false making, or knowingly passing as genuine, the note in question; and being immaterial was properly rejected. (1 Colby's Crim. Law, and cases there referred to.)

Edwin Brown, who, with his wife Lucretia, purported to be signers of the note in question, had testified concerning the signatures of himself and wife, in a manner tending to show that the said Lucretia had personally placed her signature to the note; and the note being legitimately in evidence before the jury, we see no objection to the course of the public prosecutor in calling attention to the fact claimed by him, that both the signatures of Edwin and Lucretia appeared to have been written by the same hand. This was done to throw some discredit on the testimony of Edwin Brown; and though of no great importance, we do not think any exception could be taken to the refusal of the court to stop that line of argument.

The prisoner having offered himself as a witness in his own behalf, was, on cross-examination, asked by the district attorney, the following question: " How many times have you been arrested?" This was objected to by the prisoner's counsel as incompetent, irrelevant, tending to degrade the witness, etc. The objection was overruled and the prisoner's counsel excepted. The question was asked with a view of impeaching the character of the prisoner by the answer, and he answered: " Five times, I believe." We do not think this evidence was admissible as an impeachment of the prisoner's character, either generally or for truth and veracity — for which purpose only it is claimed to have been offered. (*Jackson* v. *Osborn*, 2 Wend., 555; *People* v. *Gay*, 7 N. Y., 378; *Lipe* v. *Eisenlerd*, 32 id., 229, op. p. 238.) In the case of *Jackson* v. *Osborn*, referred to, it was held, that even evidence of indictments found against the witness for forgery and perjury were inadmissible, without proof of conviction. How, then, can evidence of a mere arrest, without even specifying that the arrest was upon the charge of crime, be admitted as an impeachment of the character of the party arrested, in any particular. The evidence was calculated to prejudice the prisoner in the minds of the jury, for which purpose it was offered; and having been admitted against his objection, we cannot say that it did not produce some effect, however much the other evidence in the case might be supposed to have warranted the conviction.

In the case of *Brandon* v. *The People* (42 N. Y., 265), the

admission of a similar question was sustained; but as we understand that case, wholly upon the ground that the only objection made to it was that the prisoner had not put her character in issue, wholly ignoring the rule that the prisoner, having made herself a witness, was subject to the same liability to have her character attacked by proof of facts having a tendency to degrade her in the estimation of the jury that any ordinary witness was liable to; and we understand the case to, impliedly at least, concede, that had the proper objection been stated the question should have been excluded.

There is, in reference to the testimony thus objected to, another question which gives rise to grave doubts. The counsel for the prisoner then on the witness stand, interposed the objection that the prisoner (and witness) was privileged from answering the same, on the ground that the answer must tend to disgrace and degrade him, and was wholly immaterial to any issue in the case. This is answered by saying that the privilege is personal to the witness, and the objection must be taken by him. True, this is the rule where the person under examination is a mere witness; and it is held that, in such a case, the objection of the party is unavailing. But under the present state of the law where the parties are also witnesses, it would seem that a different rule should prevail, and that a party to the suit being under examination as a witness, the objection may properly be stated by his counsel, and that it should be held that the witness and party must be assumed to speak through the mouth of his counsel, who is presumed to be authorized and required to protect his rights, and interpose objections in his interest growing out of any incident in the litigation.

How this may be it is not necessary to decide at this time, inasmuch as we think the question was inadmissible upon the general objection that the answer could have no legitimate tendency to impeach the character of the prisoner, and was therefore irrelevant and calculated to prejudice him. For this reason, and without more particularly discussing the numerous other exceptions taken in behalf of the prisoner, we think the conviction should be reversed and a new trial ordered.

Judgment reversed and proceedings remitted to the General Sessions of Ontario county, with directions for a new trial.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Judgment reversed and proceedings remitted to the General Sessions of Ontario county, with directions for a new trial.